May it please the Court and Council, I'm Paul Smith on behalf of the Oregon Department of Revenue and its director. With the court's permission I'd like to reserve three minutes of my time for rebuttal. The issue in this case is whether Oregon's generally applicable property tax violates subsection b4 of the 4R Act. Specifically the issue is whether Oregon's decision to exempt intangible personal property from taxes for locally assessed taxpayers but not grant a similar exemption from centrally assessed taxpayers like the plaintiff in this case whether that decision violates the 4R Act. And that question is questioned by the U.S. Supreme Court in ACF Industries. In 1994 the U.S. Supreme Court held that Oregon's exemptions from its generally applicable property tax did not violate subsection b4. The court specifically noted that the structure of section 11503 warrants the conclusion that subsection b4 does not limit state discretion to levy a tax upon railroad property while exempting various classes of non-railroad property. And that's what we have here. The state of Oregon has exempted certain classes of property, intangible personal property, for locally assessed taxpayers but not granted a similar exemption from centrally assessed taxpayers. The court further noted that a state may grant exemptions from generally applicable ad valorem property taxes without exposing the taxation of railroad property in validation under subsection b4. So the district court here, you know, I understand it all turns on whether this is an or I guess it, but the district court found that there was no generally applicable intangible property tax in Oregon. And, you know, it just seems like Oregon's set it up so there isn't, you know, Oregon exempts all, everybody from tax on intangible property except these 14, these 14 entities, six of which are we have a generally applicable tax and then it only applies. And then you have some exemptions that they're complaining about. And that's certainly how the district court viewed this. I think that's not the fairest characterization of Oregon's property tax law. However, to be sure, locally assessed taxpayers make up a larger percentage, a much larger percentage of taxpayers than are centrally assessed. However, you know, Oregon Oregon statutes note that centrally assessed taxpayers, it says they're not exempt from paying taxes on intangible property. And, and, and I would agree that it's kind of a question of which direction do you look at this from? And, and what becomes important then is looking at how ACF discussed that. Let me I've got a question I'd like to focus you on. So if you turn if you look at the general provision 307.030. So let's suppose that that except clause said, except for railroads, intangible personal property is not subject to assessment and taxation. Do you have a four hour problem then? And your honor, leaving aside the question about whether any property tax challenge is is cognizable under subsection before, I think we would have a problem. If you have a if you would have a problem in that circumstance, then doesn't doesn't the question for us really turn on how broad the class of people of entities are that are included where the railroads are judge van Dyck points out six of them refer to railroads, although some of them are nearly trivial, you know, refurbished Pullman cars, probably not a major source of revenue for, for for Oregon. But you do have some pretty you do have some pretty narrow, but pretty large, mostly probably out of state because they're heavily regulated industries listed on that on on that list. But doesn't the question for us turn on how broad that class is, and whether there's a good reason for distinguishing between that class and it? Yes, I think again, leaving aside the threshold question of whether any property tax claim is cognizable, right? Then gets to the issue that the ECF court left open where the ECF court talked about it. Attacks appears that it's singling out railroads for discriminatory treatment when railroads are part of an isolated and targeted group. Now, the ECF court gives a few clues as to how broad or narrow that has to be in order to violate before. The main clue that the ECF court gives us is it cites to a Seventh Circuit case, the Burlington Northern Rail Company versus city of Superior Wisconsin as an example of a taxing scheme that might violate subsection before because it exempts everybody in that case except a series of three dollars in the entire state of Wisconsin. And those three docks were all owned by the same railroad company. Now, that's a much broader exemption, I guess you would say, than what Oregon has provided here. The ECF court talks about singling out railroads. That's not what our central assessment system in Oregon does. There are 14 different industries. To be sure, many of them involve railroads or other aspects of the railroad industry, but most of them don't. There's utilities, there's communications, there's pipelines, there's air transportation. Inland water transportation are the other types of industries. It seems like most of these, counsel, it does seem like most of these, like railroads, are the kind of entities that pass through Oregon, but are in other... They may be in airlines, etc. They are coming from other states. So the rationale, the concern about discriminatory conduct would seem to be the type that would be, and arguably would apply to those sort of entities too. So if you're trying to look at the purpose of this law, it seems like that's what you would do, is you would say, we're gonna go after railroads, we're gonna go after things like railroads, interstate utilities, etc. And so it does seem that the group here is the kind of... The entities that are thrown in there with the railroads are the kind of entities that present the same type of problem that Congress was concerned about with railroads, it seems like. And I've heard some of the reasons. Of course, Congress only spoke about discrimination against railroads. I know there are other acts that maybe talk about discrimination against other industries there. The other thing, though, is looking at the reason why these industries are centrally assessed versus why other businesses in Oregon are not centrally assessed. And that has everything to do with the nature of these industries and the unit valuation of... Yeah, no, I know. It's an odd circumstance because it seems like... I understand and it seems rational that these types of entities that pass through, you wouldn't want assessed on a county by county basis. But they're also the kind of entities that you would want to single out for increased taxation under the rationale that Congress is trying to put out. And I'm not talking... I understand Congress is only talking about railroads here and we're only talking about railroads. I'm just saying, though, that you've got... You guys, you say, Oregon says, hey, we have a good reason for doing this. It doesn't have anything to do with discrimination. And that's not... It's not a crazy argument, but you also have the fact that those all happen to also be the type of entities that you would, in theory, want to... That you could squeeze harder as they come through your state and have the same interstate tax problem. So I don't know what to do with those two things. And I go in different directions. And I understand the reason why it's important to look at the reason why these industries are centrally assessed, and that that reason doesn't have anything to do with attempting to target them. The other thing I would point out, though, is... Could I ask a follow up question about that? Of course. I understand the reason why these industries are centrally assessed. And that makes perfect sense, but it seems like that's almost like a head shake on your part. Because the question is, after you've decided that these industries be centrally assessed, why are you taxing their intangible property, where you're not taxing the intangible property of industries that are assessed county by county? And I've... It doesn't... From my standpoint, the biggest thing that I wanna hear from you is something that I don't think I saw in the reference to the legislative history to this decision to tax intangible property. What's the reason? What is the reason... I understand the reason why you're centrally assessing these industries, but what's the reason why you've decided to tax the intangible property of those industries and not other industries? You wanna take one more crack at giving us a reason for doing that? I'll do my best, Your Honor. I think it again gets back to how these industries are valued and looking at the unit valuation. And when you're looking at the unit valuation, it's much more difficult to separate... Because you're looking at the whole value of the entire entity, and rolled up into that entire value is the value of its intangible personal property as well. And so because of the need for unit valuation... But I thought the rationale for centrally assessing these industries was... It didn't have anything to do with intangible property. I thought that the rationale was based on the need to avoid sort of balkanization of taxation with respect to these industries in the different counties, and there may be a raise to the top or whatever, however you wanna characterize it. But I don't understand how the rationale for centrally assessing the industries relates to the decision to tax the intangible property of these industries. So that's my question. And I think my best answer to that is because the rationale for centrally assessing requires a unit valuation of the business there, it's difficult to disentangle the intangible personal property from that unit valuation. It's not like a local assessor going to a factory and saying, that factory is valued at this, and that prepter over there is valued at that. It can easily disentangle those things from the overall valuation. That's less practical when you're talking about a unit valuation of the entire business where intangible personal property is ruled. Council, didn't you not include the goodwill for BNSF for a number of years? Yes, Your Honor. 2011 to 2016? Yes. And was that difficult for you to do that? You did it for five years and then changed your policy, so you were able to take it out. I understand the argument was, well, it may be difficult because it's all wrapped up, so we just wanna get one valuation. Well, that's a good argument for convenience, except for five years, you did it, you were able to do it that way, so it wasn't hard. Yes, Your Honor. And the record doesn't reflect why the department did not include the goodwill for those first five years. And so, unfortunately... Have you provided any evidence that it was hard to do, it was impractical, or that... No, I don't think the record contains any evidence that it's impractical. I'm mostly just trying to respond to John Greer's question about what the rationale was for why the state of Oregon has drawn the lines the way that it has, why that it doesn't exempt centrally assessed taxpayers from taxing on their intangible personal property. Was this a change council that was made across the board for all of the industries that are included in that section of the code, or just for railroads, or just for BNSF? Your Honor, I don't believe the record reflects that, and I don't know the answer to that. Okay, so you don't... So, as far as you know, there was no sort of general... Not a new director of revenue in Oregon who says, why are we doing it this way? This is ridiculous, let's... We need to tax intangible property, and we're gonna do it for all of these 14 folks who are listed in the code. I don't believe the record reflects that, and I don't know the answer to that. So it is  limited specifically to BNSF. Well, and I certainly think the record doesn't reflect that, that it is just limited to BNSF, but I don't know the answer. But would it be important to know the answer, counsel? If we thought that something turned on that, or that a victory by the state turned on that, should we remand it to the district court to figure out whether anybody else within that class has been taxed on intangible property? Well, I don't think so, because this case wasn't litigated along the lines of, this is just BNSF that's being targeted here. Rather, it's a question of whether Oregon's system violates the subsection B4. And so I think that's a legal question that this court can answer. If, however, this court is concerned that its answer does turn on whether this was targeted just at plaintiff in this case, then I think it probably would be appropriate to remand, because I don't think the record reflects that. I also wanna turn, if I can, for just a moment to kind of what I term in the briefs as the threshold argument. And I see I'm past my time, but I trust the court will cut me off if they need to. And in 2011, the Supreme Court returned to the subsection B4 issue in CSX Transportation versus Alabama Department of Revenue. And the issue in was whether a state sales tax that exempted some taxpayers, but not Alabama. And so why don't we, judges, unless you wanna jump on this right now, why don't we save... We'll definitely give you time for rebuttal, and you will wanna address that, especially, I'm sure, if your opponent addresses it and you wanna respond. So we'll do it that way since we've gone over time. We'll give you some time for rebuttal. Mr. Horwich, why don't you go ahead and proceed? Thank you, Your Honor. Ben Horwich for Appellee BNSF Railway Company, and may it please the court. I suppose I'll pick up with the colloquy that judges Chhabria and Bybee were having with my friend about the question of, well, how do you deal with the intangible property when it's a centrally assessed taxpayer? I think the first thing is to put that in proper context, that the only relevance of that argument is it would be as a justification for the difference in treatment. So at that point, we're evaluating a discrimination claim, and the Supreme Court has said in CSX2 that discrimination in this context is treating two similarly situated taxpayers differently without a justification for the difference. And so this would be, I guess, offered as a question about remand. I don't think, well, it's administratively more convenient for us to discriminate. It can never be a valid justification. I don't think we wanna go down the path of saying that discrimination, just because it's convenient for the discriminator, is therefore lawful. The other thing is, I think it's just... It's wrong to say that it's actually that difficult. So I pulled up the best list I have is from 2017, BNSS 2017 tax year. We're centrally assessed on the unit value concept in virtually every state. There's a couple states where we don't really operate in the same way, and so we're not... We look more like a normal industrial taxpayer. But virtually everywhere where we have property, we're valued as a unit. And that's in 20 some states, close to 30. And in 2017, we had deductions taken for intangible assets in 15 of those states. And I think now it would be up to 16 because Wisconsin would have been one of those, and of course that was addressed in the Seventh Circuit's recent decision of which the court is aware. And so, and I'm happy to give the court the list, but the point is that everybody else in the country finds it perfectly practicable to assess us, and then to the extent that assessment has captured intangible assets, it's just a subtraction problem. You value the intangible assets and you subtract them off. And that's exactly what was going on in the Seventh Circuit case. So there, the Union Pacific Railroad, it said to Wisconsin, we think our computer software, which is valued at so many millions of dollars, is exempt from taxation. And so we subtract that off in our... We think that should be subtracted off in our valuation computation. And Wisconsin disagreed, they litigated it, the Seventh Circuit held in line with what every other court to look at this question has held, which is that, okay, this is discriminatory and it's not justified. And so Union Pacific gets an exemption for that software. And the effect of that, this gets to the broader point about the case, the effect of that is simply to treat the railroad in the same way as the general mass of taxpayers. So what ACF is about is a case where they are... Can I interrupt with a quick question about... We haven't yet... We've talked about some practicalities in case law, we haven't really looked at the statutory language yet. And I wanna ask you a question about that. I'm looking at subsection A2, the definition of assessment jurisdiction. Yes. And it says, the term assessment jurisdiction means a geographical area in a state used in determining the assessed value of property for ad valorem taxation. So I gather that for purposes of your client, the assessment jurisdiction is the state of Oregon, right? I actually don't think that definition controls here because under B4 does not refer to the assessment jurisdiction. No, I'm not asking about B4. I mean, I know where you're going. Okay, okay. Because B1 and B2 and B3 all refer to assessment jurisdiction and there's no reference to B4. Right. I understand that. Okay, okay. But for purposes of the statute, right, just... For purposes of the statute, there is something called an assessment jurisdiction. And an assessment jurisdiction is the geographical area in a state used in determining the assessed value of property for an assessment jurisdiction in this case. And I'll get to that in a second. But to the extent we need to assign an assessment jurisdiction for these 14 industries that are taxed centrally, that are assessed centrally, that would have to be the state of Oregon, right? No, it wouldn't necessarily be that. What else could it be? I mean, they're centrally assessed, right? No, that's correct. But it is also true, for example, that railroads are... Their values are then, in many states, and I can't remember with Oregon specifically, but I believe it's true in Oregon, their values are then allocated at the county level. So it sort of... There's an overall state number and then it's broken up into particular amounts that are attributable to particular counties. And so there sometimes is litigation in which the relevant comparison that needs to be made is between the railroad and other commercial and industrial tax payers in that county, if there's some feature of the case that is specific to the county. So for example, if the county had a... If the county... To take an example under B3, if the county was... That particular county was imposing a higher tax rate, you would look within the county at what the individual what the other commercial and industrial tax payers are paying. But I thought... I mean, who... Wait a minute. So who's doing the assessing here? Isn't it the state doing the assessing in the case of the railroad? The state does... Yes, the state does the assessing, but the definition you read, Your Honor, is not about who does the assessing, but rather what is the geographical area that they are using. And so for some purposes... Isn't the whole point of this that for these industries, we're gonna use the entire state as the geographical area for assessing them because we can't do it county by county? That's correct, but there is another step in the assessment process that often breaks up values by county. And so sometimes the dispute is actually specific to a county, and in that situation, you would wanna be looking just at the county. So the assessment process doesn't end with the state value. The assessment process typically ends with values that are allocated out to specific counties. I'm not sure if this affects your question, but I... Yeah, let me tell you why I'm... Let me tell you why I'm asking the question. So then I turn to subsection C, and I'm looking at the second sentence of subsection C. And this subsection is about the circumstances in which a railroad could get relief under this statute, right? Yeah. It says, relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5% the ratio of assessed value to true market value of other commercial and industrial property. And I'll pause there. So in other words, it sounds like what that language is saying so far is we're only gonna let you recover if there's more than a 5% difference between what you're being assessed and what your comparator is being assessed, right? Otherwise, it sounds like what this section is saying is it's not a big enough deal to allow you to recover under this statute. And then it says, relief may be granted only if the ratio is... Of true market value of rail transportation property exceeds by at least 5% the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction, right? So when I was reading that, I got a little caught up in what the comparator should be because it struck me that the most natural understanding of this case is that the assessment jurisdiction for purposes of these 14 industries is the state of Oregon. And the assessment jurisdiction for the purpose of the industries that are assessed is the county in which they are assessed and taxed. So it made me wonder if under the plain language of the statute, it would be inappropriate for us to conduct a comparison between these industries that are assessed statewide and industries that are assessed countywide. I see. Now I understand your question. So a few things. So the first thing is that that sentence of C, of subsection C that you're referring to does not apply in B4 cases. So the Supreme Court held that in footnote two of CSX one. It's quite varied and I agree with your honor that the plain language sort of leads to this confusion, but the Supreme Court... That's the 2007 CSX? The 2011 version, the 2011 case. So it says, referring to that sentence, the Supreme Court says the next sentence concerns the relief available for violations of sections B1 and B2. So that's the first thing. Second thing is that even before that, this court has held in the trailer train case, cited in our brief, but I'll give you a citation, 697 F2nd 860. This court had held that to the same effect, that that provision of subsection C only applies in B1 and B2 cases. So that's the first thing. That section just doesn't come into play in a B4 case, which makes sense because it's about assessment ratios that are kind of de minimis and the claims that are about assessment ratios are really those brought under B1 and B2. The second thing I would say is that the... I think the implication of your honor's reading, sort of whether you think about it as part of the statutory text or you simply think about it in the implication of that is that you wouldn't be comparing the railroads to other commercial and industrial taxpayers. You would simply be comparing the railroads to the other disfavored taxpayers. And there are two points on that. Well, I mean, you're calling them disfavored, but the other way to put that is you're comparing the railroads to the other taxpayers in that assessment jurisdiction. And if you adopt that approach, you would say, well, we have these 14 industries in this assessment jurisdiction and they're all treated the same way with respect to intangible property. Right. So Congress... This is not in the papers, but I'm trying to answer your honor's question. I'd be happy to file a letter that gives you the authorities. But Congress actually considered that approach and rejected it. So there's a Senate report in the legislative history that explains that Congress had considered adopting an approach where you would compare the railroads to the other utilities that Congress knew were assessed in this way. And that approach was rejected in favor of the all commercial and industrial taxpayers approach. And there's a really good report that explains why Congress did that, which is... And this gets back to some of the colloquies with my friends. I think Judge Van Dyke, you recognize this. The strategy of the 4R Act is that by tying the railroads treatment to a general mass of taxpayers, you assure that the state isn't going to be squeezing the channels of interstate commerce for extra tax revenue. Right. So on the one hand, the state can grant specific policy exemptions, which the court in ACF recognizes are kind of part of our federalism balance. Right. That states do have the ability to say, well, we want to promote a particular industry or exempt a particular kind of property. And we don't have to give the railroads most favored taxpayer status under when we do that. But here you've got a situation where the state is not... Even if you treat the state as exempting everybody except the railroads and a few other utilities here, which I don't think is the right reading of the statute. But even if you read it that way, the state isn't exempting everybody for some policy reason. Right. What the state is doing here is adopting a tax law that creates this burden on interstate commerce, which is exactly what Congress was trying to address. Well, these other industries, I don't know much about Oregon, but I'm looking at this list of industries and it includes heating and gas and electricity. I mean, in California we have PG&E. So is there a similar entity in Oregon that provides heating and gas and electricity? And is it really fair to say that that's the type, whatever entity that is, is that the type of entity that you would expect the state of Oregon to discriminate against for taxation purposes? Well, the reason, no, I don't think that's quite the right way to think through it. Because what Congress's strategy is, is that if you let the state lump the railroads in with other taxpayers who can't vote with their feet, who can't remove themselves from the jurisdiction, you're not going to actually protect the railroads. Right. So I mean, Judge Chabria, you and I are here in Northern California and, you know, it's been all over the press that, you know, Elon Musk is talking about, well, I'm gonna take Tesla up and I'm gonna go move it, you know, move in with Judge Bivey and Judge Van Dyke in Nevada. Right. And industries like that can do that. They can make good on that kind of a threat. Right. But the gas pipeline company and the railroad can't do that. They can't pick up and leave in the same way. And so they're stuck there and they're going to be squeezed by the state for all their work. I think it's worth remembering that if Oregon's correct here, right, not only can they, not only can they, they, they do what I think one of your honors suggested and simply say, well, only the railroads are the ones who have to pay for intangible property tax. Right. But they can do it on the other end too, which is they can say, you know what, nobody even has to pay personal property tax at any time. Right. Which some states do. Right. And, uh, and, uh, and they could go further and they could say, well, we're just going to have only some kinds of real property tax. Right. There's no limit to the difference in treatment. And that's the, and so the strategy of the four R act is to say, well, you want to link the railroads to a group of taxpayers. This court actually in trailer train and footnote 11 of trailer train suggests that, you know, if you've lumped the railroads in with a majority of other commercial and industrial taxpayers, this is footnote 11 of that trailer train decision. Uh, you know, then you've got some good assurance, but this is, this is the opposite end of the spectrum. You've got, you know, you're, you would, if you're, uh, uh, if, if you're, um, a railroad, you see your own name written into the law for this disfavored treatment. That's, that's the sort of targeting and isolation that the Supreme Court was referring to. And he said, I see I'm quite over my time. So I will pause here and ask if the court has other topics. I, I don't have any more questions. Judges, do you have any more follow up? No, I'm good. All right. Well, thank you. Thank you. We'll come another two minutes here. Thank you, Your Honor. And may it please the court again. I just have three points that I want to make. And the first is getting back to the point about what CSX said about the availability of challenges to property taxes. And I won't, I won't belabor the point, but the court in CSX said that any form of taxes that my state might impose on any asset or transaction except the taxes on property previously addressed in subsections B one through B three. And that I think, you know, leads to the question of whether any type of property tax challenge can be brought under B four. Um, but I'll rely on my briefing for, for that. Unless a lot of other courts have rejected that argument. Isn't when you acknowledge that not in the Ninth Circuit, there are other courts outside the Ninth Circuit? The only court, the only, there have been two post-CSX courts that have, that I'm aware of, at least circuit courts that have addressed this issue. One is the Seventh Circuit, the recent decision out of the Seventh Circuit, which didn't talk about CSX at all. So it didn't deal with that language for CSX. And the other is the Fourth Circuit. But it reached a conclusion inconsistent with your argument? Well, it certainly, yes, it reached a conclusion inconsistent with that argument. I don't know that that argument was made in that case. The only case that I'm aware of where the court actually grappled with CSX was the Fourth Circuit. And I've addressed in my briefing why I think the Fourth Circuit's rationale misreads CSX. The point I wanted to get to relates to the discussion that Debra was having. And that is, I would also point the court to subsection A four and the definition of property in the 4R Act. And it says commercial and industrial property. That is, property devoted to a commercial or industrial use and subject to a property tax levy. That suggests that the appropriate comparison class here is not all taxpayers in Oregon, but rather those who are centrally assessed. And this goes a long way. I'm sorry, I lost you there. You said you were responding to my question. And unfortunately, I think I was looking at the wrong statute. What did you want me to look at again? So this is 49 U.S.C. 11-503-A-4. And that is the definition of commercial and industrial property. And it specifically says this is property devoted to a commercial or industrial use and subject to a property tax levy. If you're a locally assessed taxpayer, your intangible property is not subject to a property tax levy, whereas a centrally assessed taxpayer is. That's why the appropriate comparison class here is not to all taxpayers, but it's instead to the other centrally assessed taxpayer. Could I ask you a follow-up question about that? Of course. This argument that I sort of threw out to Mr. Horwich, you didn't make it. And I haven't seen anybody else make it. Why didn't you make it? What am I missing? Your Honor, I agree. This wasn't a main focus of our briefing. We do note this definition on page 13 of our reply brief. And so I don't think we've abandoned this notion. That is to say the stipulations in this case were that the appropriate comparison class was to commercial and industrial property in the state of Oregon. Right. And I think that's the stipulation. Context for that stipulation is look at what the definition of commercial… Just a pause for a second. It does sound like you're stipulating away the argument that I was floating to Mr. Horwich there. And I don't think we are. And that is because the context for that stipulation is what's the definition of commercial and industrial property. And subsection A-4 tells us what that definition is and tells us that you would only look to property that is subject to a property tax levy, which for locally assessed taxpayers is not intangible personal property. My last thing that I would just go back to is urge the court to look at ACF and understand that the court was evaluating this very property tax system, Oregon's property tax system, which is not markedly different now than it was 25 years ago. It at that time contained exemptions for intangible personal property. It had central assessment. It had local assessment. It's the same. And so the court in ACF said that Oregon's property tax system didn't violate subsection B-4. Unless there are any other questions, we would ask this court to reverse the district court. Thank you, counsel. This case is submitted.
judges: Bybee, Vandyke, Chhabria